# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

**MICHAEL SAMUEL**
michael@samuelandstein.com

February 19, 2019

ADMITTED IN
NY,

**VIA ECF**

Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 12C
New York, NY 10007

**Re: Cabrera et al v. 2855 Powercell, Inc. et al**
**Case No. 1:17-cv-10139-GHW**

Dear Judge Woods:

We represent plaintiffs in the above-captioned matter and submit this letter to the Court with the consent of Michael Chong, Esq., counsel for defendants, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter (attached as Exhibit A), and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

## Background

Plaintiffs filed their complaint in this matter on December 28, 2017. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for minimum wage violations and unpaid overtime pay, as well as claims solely under the New York Labor Law for failure to pay "spread of hours" pay, failure to provide wage notices, and failure to provide wage statements.

Defendants operate a cellphone store in the Bronx. The Corporate Defendants have at least four (4) active stores: (1) 2855 3rd Avenue, Bronx, NY 10455; (2) 410 E. 149th Street, Bronx, NY 10455; (3) 327 E. 149th Street, Bronx, NY 10451; and (4) 508 Willis Avenue, Bronx, NY 10455. Plaintiffs were employed by defendants primarily as salespeople and customer service representative. Plaintiffs were responsible for selling Defendant's cellphone products, activating the phones and dealing with any customer service issues.

Plaintiff, Victoria Cabrera, was employed at the store located at 2855 3rd Avenue, Bronx, NY 10455, for three separate intervals from approximately January 2012 to August 2017;

    (a) January 2012 to August 2014

    (b) January 2015 to May 2015

    (c) August 2015 to August 2017.

Ms. Cabrera alleged that she worked approximately 70 hours per week, 7 days a week, from 10 a.m., to 8p.m. each day. Ms. Cabrera was paid at the following rates:

    (a) $420 per week from January 2012 to August 2014

    (b) $490 per week from January 2015 to May 2015

    (c) $700 per week from August 2015 to August 2017

Plaintiff, Omayra Colon, was employed by Defendants from approximately July 2013 to August 2016:

    (a) From approximately July 2013 to December 2014 at the 2855 3rd Avenue, Bronx, NY 10455 location.

    (b) From approximately January 2015 to May 2015 at the 410 E. 149th Street, Bronx, NY 10455 location.

    (c) From approximately May 2015 to August 2016 at the 327 E. 149th Street, Bronx, NY 10451 location.

Ms. Colon alleged that she worked 6 days, or on occasion, 7 days, per week; 63 hours per week, from 10 a.m. until 8:30 p.m. Ms. Colon was paid a the following rates:

    (a) $60 per day from July 2013 to December 2014

    (b) $65 per day from January 2015 to May 2015

    (c) $70 per day from May 2015 to August 2016.

Plaintiff, Emely Turbides, was employed by Defendants from approximately January 5, 2015 until September 2016. Ms. Turbides was rotated between four (4) store located (2855 3rd Ave., Bronx, NY 10455; 410 E. 149th St., Bronx, NY 10455; 327 E. 149th St., Bronx, NY 10451; and 508 Willis Ave., Bronx, NY 10455). She worked 5 days per week, approximately 50 hours each week, from 10 a.m. to 8p.m. each day. Ms. Turbides was paid approximately $350 per week (for the first four months of her employment she was paid in cash).

Plaintiffs were not allowed to take breaks during their workday except for the exception of Ms. Cabrera who was allowed a 30-minute daily break from the end of

2015 onward. Defendants paid Plaintiffs $1 per accessory in commission, if they made more than $2,000 per week in sales.

This resulted in a rate of pay below the minimum wage, and Plaintiffs' pay did not contain an overtime premium component or a "spread of hours" bonus for working shifts extending more than ten hours from start to finish. To disguise how they were paid, Defendants paid them partly by cash and partly by check, and failed to provide them with weekly records of their regular and overtime compensation and regular overtime hours worked. Moreover, they were never given wage notices that explained the manner in which their pay was calculated.

Based on these facts, Ms. Cabrera calculated that her maximum possible recovery was about $13,062.50 on her minimum wage claim, about $32,494.82 in overtime damages, plus approximately $54,641.57 in liquidated damages;, $9,084.25 in "spread of hours" damages, plus $10,000 on her Wage Theft Prevention Act claims. In addition, prejudgment interest on her New York Labor Law claims would be roughly $16,471.07. These figures add up to approximately $135,754.21.

Ms. Colon calculated that her maximum possible recovery was about $18,338.57 on her minimum wage claim, about $13,420.71 in overtime damages, plus approximately $31,759.29 in liquidated damages;, plus $10,000 on her Wage Theft Prevention Act claims. In addition, prejudgment interest on her New York Labor Law claims would be roughly $8,860.84. These figures add up to approximately $82,379.41.

Ms. Turbides calculated that her maximum possible recovery was about $7,987.50 on her minimum wage claim, about $3,818.75 in overtime damages, plus approximately $11,806.25 in liquidated damages;, plus $10,000 on her Wage Theft Prevention Act claims. In addition, prejudgment interest on her New York Labor Law claim would be roughly $2,443.89. These figures add up to approximately $36,056.39.

For all claims, the grand total comes up to approximately $254,190.01.

In addition, as a prevailing plaintiffs would be entitled to an award of attorneys' fees and costs, which at the time of settlement were $31,965.01. (Of course, if the parties had proceeded to trial, that figure would have gone up substantially).

## Settlement Agreement

As the Court can see from the Settlement Agreement submitted herewith, the parties agreed to settle Plaintiffs' claims against Defendants' for a total of $160,000.00. While the final settlement amount is somewhat less than their maximum possible recovery, we believe this to be a fair resolution to this matter, due to certain *bona fide* disputes about the value of their claims and the risks attendant with continuing the litigation.

Defendants did maintain time records for their employees and those records support Defendant's position that each of the Plaintiffs' were paid correctly. Plaintiffs' dispute these

records and claim that a number of them have been falsified and forged, therefore, since these records cannot be deemed accurate the calculations are based entirely on their own recollections about their work history. To be sure, under Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), in the absence of proper time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. Nevertheless, defendants disputed the number of hours plaintiff worked, both within a work day and the number of days they worked each week, and it would have been up to a finder of fact to decide how much of plaintiffs' testimony to credit. To the extent defendants were believed, it could have significantly limited plaintiffs' overtime and spread of hours claims. In addition, Defendants' have provided financial records showing that they have limited financial ability to sustain a large judgment.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.* at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted)

Applying these factors, Plaintiffs suggest that they weigh in favor of settlement approval. First, even after attorneys' fees, plaintiffs will be receiving about 42 percent of their maximum possible FLSA damages – both actual <u>and</u> liquidated. They will also be compensated for defendants' violations of minimum wage and overtime law outside the federal statutes of limitations, for violations of the spread of hours regulations and the Wage Theft Prevention Act. They will receive these funds without running any risk or having to prove their claims. This is a substantial recovery, and courts routinely approve settlements that represent a much smaller percentage of potential recovery. *See, e.g., Beckert v. Ronirubinov*, 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding a settlement of approximately 25%

of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation). And although this settlement agreement calls for installment payments, Plainitffs are protected by a confession of judgment for 150% of the settlement amount.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and the case was settled during discovery and after a full and complete opportunity of a review of all of the Defendants' records, allowing the parties to assess the strengths and weaknesses of their positions. Plaintiffs' thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. All Plaintiffs no longer works for defendants, so there is no risk they will be subject to the same treatment in the future. Moreover, no one opted in to this collective action; thus the settlement of this action will have no impact on any other employees or their rights. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out-of-pocket expenses of $560 (filing fee and service of process)[1] and will retain 1/3 of the net settlement as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New*

---

[1] The Court can take judicial notice of the filing fee; receipts for other expenses (except subway fare) are attached as Exhibit C.

*Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 1.66 times our lodestar, a multiplier much smaller than is commonly approved in FLSA contingency litigation. Pucciarelli v. Lakeview Cars, Inc., 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)("multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as per the attached billing records - Exhibit "B" which are maintained contemporaneously in our billing software.

I am a founding partner of Samuel & Stein. I have practiced law since 1993, have been admitted in the state of New York since 1993, and I focus my practice almost exclusively on wage-and-hour cases, serving as counsel of record in more than 250 such cases. I am admitted to practice in the Southern and Eastern Districts of New York. My time appears in the chart under "MS." My regular hourly rate for matters such as these is $425. I believe this hourly rate to be commensurate with other practitioners with a similar amount of experience in my locality who represent clients in matters such as this. I have handled a number of FLSA cases on behalf of defendants and my hourly rate for those case is between $425.00 and $450.00. My former associate, Ruchama L. Cohen, has practiced law since 2015, almost exclusively in the wage-and-hour area. She became licensed to work in the State of New York in January 2016. She is also admitted to practice in the State of New Jersey, the District of New Jersey, and the Southern and Eastern Districts of New York. Her regular hourly rate is $225. Her time appears on the chart as "RC."

These rates are well within the norm of billing rates for cases of this nature in this district. See *Mendez v. Casa Blanca Flowers, Ltd.*, 2014 WL 4258943, at *6 (E.D.N.Y. July 8, 2014), report and recommendation adopted, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff.") (collecting cases); *Tacuri v. Nithin Constr. Co.*, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400); *Griffin v. Astro Moving &*

Hon. Gregory Woods
February 19, 2019
Page 7 of 7

*Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $200 to $325 for senior associates).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

Michael Samuel, Esq.

Enc.

cc: